IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESSICA MURCH,

            Plaintiff,

      v.

GPS CAPITAL MARKETS, LLC,

            Defendant.

Case No. 3:24-cv-01854-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jessica Murch ("Murch") filed this action individually and on behalf of other similarly situated individuals against GPS Capital Markets, LLC ("GPS"), alleging that GPS violated the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, but not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Now before the Court is GPS's motion to dismiss and/or strike. For the reasons explained below, the Court recommends that the district judge grant in part and deny in part GPS's motion.

///

PAGE 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND[1]

On October 28, 2024, Murch missed a phone call from a number ending in 2502. (Compl.

¶ 21, ECF No. 1.) On October 29, 2024, Murch missed a second phone call from the same

number. (*Id.*) On November 1, 2024, Murch received and answered the third call from the same

number. (*Id.*) Below is Murch's transcript of the third call:

> Jessica Murch: Hello.
>
> Alex: Hello. Hi.
>
> Jessica Murch: Hi.
>
> Alex: Can I speak to Mr. [S.C.[2]]? I was hoping to get in touch with him.
>
> Jessica Murch: Who's calling?
>
> Alex: Um, my name's Alex. I – [00:00:15] I've been reaching out to him. I'm calling from GPS Capital Markets.
>
> Jessica Murch: Uh-huh. I'm sorry. Um, he's not available, but I can, uh, take a message if that works.
>
> Alex: Okay. Like, uh, leave a message with you?
>
> Jessica Murch: Yeah.
>
> Alex: Okay. [00:00:30] Yeah. Uh, let me see if I can condense it, I guess. I – well, I just wanna confirm. Is – is [S.C.] – Mr. [S.C.] still the global practice director for Life and Financial Services?

---

[1] The Court takes these facts from the complaint and assumes they are true for the purpose of reviewing the pending motions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true all of the factual allegations contained in the complaint.") (simplified); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party.") (citation omitted).

[2] In the interest of privacy, the Court uses only the initials of the non-party individual referenced in the call.

Jessica Murch: Yes. Mm-hmm.

Alex: Okay. He is. That's great. [00:00:45] And, uh, would you happen to know if he deals with any foreign exchange, um –

Jessica Murch: Uh, yes.

Alex: He does. Okay. Great. Then, uh, you could just, I guess, pass on – if it's not too much, we're, uh – [00:01:00] our – our company's the – the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage. So, we'd love to just get in touch with him, um, or –

Jessica Murch: Okay.

Alex: – someone else who works at [S.C.'s company], uh, regarding foreign exchange.

Jessica Murch: Okay. Is this a good number to call back on? [00:01:15]

Alex: Yeah, this would be a great number. And could I get your name again just so I can know who I've talked to before?

Jessica Murch: Yeah. Kathy.

Alex: Kathy. Thank you so much, Kathy.

Jessica Murch: Mm-hmm.

Alex: I appreciate it. And I'm Alex. Um…

Jessica Murch: Okay, Alex.

Alex: But yeah.

Jessica Murch: Yeah, I'll have him give you a shout back. [00:01:30] Thank you so much. Bye-bye.

Alex: Okay. Sounds good. Have a great one. Bye-bye.

(Pl.'s Resp. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp.") Ex. D, ECF No. 16-4.[3])

---

[3] Murch included quotes from the relevant call in her complaint but did not include the call's entire content. Murch submitted a transcript of the call in response to GPS's Federal Rule of Civil Procedure ("Rule") 12(b)(1) factual standing challenge. The Court finds that it is appropriate to consider Murch's call transcript as incorporated by reference into her complaint based on her quotations from the call in the complaint and reliance on the call's content as the

Murch alleges that she uses the phone number GPS called "for personal, residential, and household reasons."[4] (Compl. ¶ 16.) Murch further alleges that her "telephone number has been listed on the National Do Not Call [("DNC")] Registry more than [thirty-one] days prior to the calls at issue" and that she "has never been a customer of GPS and never consented to receive calls or text messages from GPS." (*Id.* ¶¶ 19-20.)

Based on these facts, Murch asserts a single claim against GPS, alleging that GPS violated the TCPA by initiating more than one telephone solicitation to her phone number, which is listed on the DNC registry, within a twelve-month period. (*Id.* ¶¶ 41-46.) GPS moves to dismiss Murch's claims pursuant to Rule 12(b)(1) on the ground that the Court lacks subject matter jurisdiction because Murch does not have Article III standing to bring a TCPA claim. (Def.'s Mot. Dismiss & Strike ("Def.'s Mot.") at 11-15, ECF No. 7.) GPS further moves to dismiss Murch's claim pursuant to Rule 12(b)(6) on the ground that Murch fails to state a claim upon which relief can be granted. (*Id.* at 15-25.) In the alternative, GPS moves to strike Murch's class allegations pursuant to Rule 12(f) on the ground that Murch's proposed class is facially uncertifiable. (*Id.* at 25-31.)

///

///

---

basis for her claim. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.") (citations omitted).

[4] "[Section] 227(c) and its implementing regulations apply only to 'residential' telephone subscribers[.]" *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022).

**DISCUSSION**

I.     **LEGAL STANDARDS**

    A.     **Rule 12(b)(1)**

Typically, "when 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Mecinas v. Hobbs*, 30 F.4th 890, 896-97 (9th Cir. 2022) (quoting *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000)). An exception to this "general rule" is "where the defendant brings a motion under Rule 12(b)(1) challenging subject matter jurisdiction as a factual—rather than facial—matter." *Id.* at 896 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

If the defendant asserts a factual attack "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Ordinarily, "[a]t that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.* (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). If, however, "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.* (quoting *Augustine*, 704 F.2d at 1077).

    B.     **Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### C.    Rule 12(f)

Rule 12(f) provides that a "court may strike from a pleading . . . any . . . immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "A decision to grant a motion to strike class allegations at the pleading stage is the 'functional equivalent of denying a motion to certify a case as a class action' before discovery commences." *Nichols v eHealthInsurance Servs., Inc.*, No. 5:23-cv-06720, 2025 WL 689721, at *4 (N.D. Cal. Mar. 3, 2025) (quoting *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017)). "The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.'" *Id.* (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit has instructed that generally, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting *Vinole*, 571 F.3d at 942). "But when the problem with the class allegations is 'facially evident, it makes sense to address the issue early on.'" *Id.* (citation omitted).

## II.    ANALYSIS

### A.    Rule 12(b)(1)

The Ninth Circuit has explained that "[t]o contest a plaintiff's showing of subject matter jurisdiction, a defendant may file two types of Rule 12(b)(1) motions[.]" *Bedwell v. TBLB*

*Enters. LLC*, No. 21-56245, 2022 WL 3083320, at *1 (9th Cir. Aug. 3, 2022). Specifically, a defendant may file "a facial attack, which challenges jurisdiction 'facially,' by arguing that the allegations . . . are insufficient on their face to invoke federal jurisdiction, or a 'factual' attack, which presents extrinsic evidence . . . disputing the truth of the allegations of the complaint that would otherwise invoke federal jurisdiction." *Id.* (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

Here, GPS brings a factual attack on Murch's Article III standing to assert her TCPA claim, and a facial attack on Murch's standing to seek injunctive relief. (*See* Def.'s Mot. at 9, citing the relevant sections containing the respective arguments for dismissal and stating that "[i]n this Motion, GPS makes both a factual . . . and a facial . . . Article III standing challenge").

### 1.    Injury in Fact

GPS moves to dismiss Murch's claim on the ground that "extrinsic evidence shows she did not suffer any 'injury in fact' traceable to GPS's conduct, and therefore she lacks Article III standing." (*Id.* at 11.) Specifically, GPS argues that "[Murch] is at best complaining of a 'bare procedural violation' in this case . . . divorced from the 'real harms' the TCPA was designed to prevent" because the relevant call was intended for S.C., at a published business number. (*Id.* at 13-14, "[T]he evidence shows that the one short call that Plaintiff claims to have answered on November 1, 2024 (out of the three at issue) was in reality made to a published business number, that is apparently owned and used by a different person ([S.C.])." (emphasis omitted). GPS submits with its motion a recording and "rough transcript" of the relevant call (Decl. Everett Greenleaf ("Greenleaf Decl.") Ex. B, ECF No. 8-2) and argues that the extrinsic evidence demonstrates that "[Murch] plainly was not solicited to purchase anything from GPS on any call, as is alleged." (Def.'s Mot. at 13.)

///

Murch responds that she has owned the relevant phone number since July 2024 and that "[GPS] could, and should, have checked whether the telephone number was possibly assigned to someone else entirely and scrubbed it to determine whether it was on the National Do Not Call Registry before calling it, but consciously did not do so." (Pl.'s Resp. at 11, ECF No. 16) (emphasis omitted). Murch also submits her own transcript of the relevant call and argues that "[o]n its face, the script is clearly telephone solicitation extolling the benefits of GPS Capital's foreign exchange brokerage services." (*Id.* at 13.) Specifically, Murch argues that the caller "extolled the benefits of GPS Capital's foreign exchange services" by stating that "our company[ is the] nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage[, s]o, we'd love to just get in touch with him . . . [or] someone else who works at [S.C.'s company] . . . regarding foreign exchange." (*Id.*)

### a.    Applicable Law

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Chennette*, 50 F.4th at 1221 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). "An allegation of a bare procedural violation is not enough to satisfy Article III because the injury 'must affect the plaintiff in a personal and individual way' and must be 'de facto' (that is, 'actually exist')." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

The Ninth Circuit has determined that "in enacting the TCPA, Congress 'establishe[d] the substantive right to be free from certain types of phone calls and texts absent consumer consent . . . [and] identified unsolicited contact as a concrete harm.'" *Id.* (quoting *Van Patten v. Vertical*

*Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). The TCPA defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). "A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Chennette*, 50 F.4th at 1221 (quoting *Van Patten*, 847 F.3d at 1043).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage*, 343 F.3d at 1039 n.2). "A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits." *Farr v. United States*, 990 F.2d 451, 454 n.1 (9th Cir. 1993) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)). "[W]here jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment." *Id.* (quoting *Careau Grp. v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991)). "Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077.

### b.    Analysis

#### 1)    Standard

Murch argues that the Court should deny GPS's jurisdictional challenge because the jurisdictional question is intertwined with the merits of her TCPA claim. (*See* Pl.'s Resp. at 9, "[W]hen, as here, the question of jurisdiction and the merits are intertwined with the statute, a

12(b)(1) motion is proper 'only when the allegations of the complaint are frivolous.' When the jurisdictional issues of the case are so intertwined with the factual merits-based issues, the motion should be denied and the case allowed to proceed to a determination on the merits[,]" citing *Safe Air for Everyone*, 373 F.3d at 1039-40.) GPS responds that "[t]his Court is not precluded from ruling on this issue now by the 'intertwinement' rule, because GPS's factual jurisdictional challenge is not inextricably intertwined with, and is 'separable from the merits' of, Plaintiff's TCPA claim." (Def.'s Reply Pl.'s Opp'n ("Def.'s Reply") at 2, quoting *Alfi v. Nordstrom, Inc.*, No. 3:09-cv-01249, 2010 WL 5093434, at *4 (S.D. Cal. Dec. 8, 2010), ECF No. 22.)

The Court finds that GPS's jurisdictional challenge "is so intertwined with the merits that its resolution depends on the resolution of the merits[.]" *Farr*, 990 F.2d at 454 n.1 (citation omitted). Specifically, the TCPA serves as the basis for federal subject matter jurisdiction and Murch's substantive claim for relief and thus the question of jurisdiction and the merits of this action are intertwined. *See* 47 U.S.C. § 227(g)(2) ("The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection."); *see also Safe Air for Everyone*, 373 F.3d at 1040 ("The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983))); *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 922 (9th Cir. 2002) (finding that "the Maritime Lien Act inextricably intertwines the questions of subject matter jurisdiction and [the plaintiff]'s substantive claim for relief" because "the Maritime Lien Act enumerates the elements

required for *both* a valid necessaries lien and the right to enforce that lien in admiralty" and therefore, "we consider both [the jurisdictional and merits] questions according to the standards applicable on summary judgment").

Accordingly, GPS "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077; *Ventura Packers, Inc.*, 305 F.3d at 922 ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits."); *Careau Grp.*, 940 F.2d at 1293 ("[T]he ultimate jurisdictional issue is precisely the same as the ultimate issue on the merits. As a result, the district court should dismiss for lack of jurisdiction only if there are no triable issues of fact.").

### 2)    Application

The Court agrees with GPS that the material jurisdictional facts include whether the relevant call constitutes a "telephone solicitation" within the meaning of the TCPA. (*See* Def.'s Reply at 3, "[T]he extrinsic evidence submitted in this case shows that Plaintiff did not receive a 'telephone solicitation' as defined by the TCPA's DNC implementing regulations; and, as a consequence, that she did not suffer an 'injury-in-fact' as is required for standing under Article III of the Constitution, depriving this Court of federal subject matter jurisdiction to hear her TCPA claim.") (footnote omitted).

The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose for initiating the communication. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's

purpose in causing the messages to be sent."); *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. 3:22-cv-08042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023) ("It is the purpose behind a call that controls, not what happened during the call.") (simplified); *Friedman v. Torchmark Corp.*, No. 3:12-cv-02837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) ("The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future.").

The parties' evidence demonstrates that the caller first sought to confirm that S.C. owned the relevant number, worked in a particular role in the financial services industry, and utilized particular services within that industry. (*See* Pl.'s Resp. Ex. D at 1, asking if S.C is "still the global practice director for Life and Financial Services" and "if he deals with any foreign exchange[.]") The caller then asked Murch to communicate to S.C. that GPS is "the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage" and that "we'd love to just get in touch with him . . . or . . . someone else who works at [S.C.'s company] . . . regarding foreign exchange." (*Id.*) GPS's declaration in support of its motion confirms that "GPS sells foreign exchange and currency management solutions to corporate accounts," that GPS "sells its products and services to businesses and persons working in the financial services and banking sectors" and that "the purpose of [the relevant] calls was to contact an individual working in the financial sector[.]" (*See* Greenleaf Decl. ¶¶ 9-10, ECF No. 8.)

In its briefing, GPS argues that Murch did not suffer an Article III injury-in-fact because the caller did not intend to and did not encourage *her* to purchase goods or services. (*See* Def.'s Reply at 6, "[T]he evidence shows 'the purpose of the calls' was not 'to solicit the Plaintiff to sign up for the Defendant's products and services, specifically, a foreign exchange brokerage

account' as she alleges and thus that she did not receive a 'telephone solicitation' and was not

injured.") (simplified). At oral argument, GPS clarified its position that the relevant calls were

not made "for the purpose of encouraging the purchase or rental of, or investment in, property,

goods, or services" from S.C., but rather to update its calling list. (*See* Mot. Dismiss Hr'g Tr.

("Hr'g Tr.") 14:14-21, May 13, 2025, ECF No. 27.)

       Based on the submitted evidence, the Court finds that disputes of material jurisdictional

facts preclude a determination of standing at this stage of the litigation. Specifically, the parties

dispute the caller's purpose for initiating the relevant call, and the purpose of the call is relevant

to both the merits of Murch's claim and whether she suffered an Article III injury-in-fact. To the

extent GPS argues that the relevant calls were not "telephone solicitations" because the caller did

not solicit *Murch* "to sign up for [GPS's] products and services" during the call (Def.'s Reply at

6), that argument is a variation of the "intended recipient" defense, which the Ninth Circuit has

rejected as inconsistent with the TCPA's text and intended purpose. *See N.L. by Lemos v. Credit

One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (rejecting the "intended recipient" defense

and holding that "[the defendant]'s intent to call a customer who had consented to its calls does

not exempt [it] from liability under the TCPA when it calls someone else who did not consent");

*Abboud*, 2025 WL 307039, at *10-12 (applying *N.L. by Lemos* in the DNC registry context);

*Samson v. United Healthcare Servs. Inc.*, No. 2:19-cv-00175, 2022 WL 17820567, at *2 (W.D.

Wash. Dec. 20, 2022) ("The Ninth Circuit [in *N.L. by Lemos*] upheld the district court's holding

that a company that intended to call a customer, but in fact did not, . . . [does] not exempt the

company from liability under the TCPA."); *Greene v. Select Funding, LLC*, No. 2:20-cv-07333,

2021 WL 4926495, at *2 (C.D. Cal. Feb. 5, 2021) (applying *N.L. by Lemos* in the DNC Registry

context and rejecting the defendant's Article III standing challenge). Thus, the Court cannot

conclude as a matter of law that Murch suffered no injury because she was not the intended recipient of the call.

GPS relies primarily on *Selby* in support of its standing argument. (*See* Def.'s Mot. at 12, "The *Selby* case is instructive on this point.") *Selby* is distinguishable. Specifically, the court in *Selby* held that the plaintiff did not have Article III standing to assert her TCPA claim because the defendant's undisputed purpose for initiating the calls at issue was debt collection, which does not violate the TCPA. *See Selby v. Ocwen Loan Servicing, LLC*, No. 3:17-cv-00973, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) ("All of the calls at issue here relate to [the defendant]'s efforts to collect a debt and do not relate to telemarketing. Calls from debt collectors are undoubtedly unwanted, stressful, and frustrating, but the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors."). Here, unlike in *Selby*, the purpose of the calls at issue is disputed by the parties, and GPS does not argue or provide evidence supporting that the caller initiated the calls for debt collection purposes.

The other cases GPS cites are also distinguishable. For example, unlike here, where Murch submitted evidence in response to GPS's standing challenge, in *Baccari*, the court granted the defendant's Rule 12(b)(1) motion because the plaintiff failed to submit any evidence in response to the defendant's factual standing challenge. *See Baccari v. Carguard Admin., Inc.*, No. 2:22-cv-01952, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022) ("Because [the plaintiff] has not met his burden to produce evidence responding to [the defendant]'s factual attack, [the defendant]'s motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice."). *Hall* is distinguishable for the same reason. *See Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023) ("Here, [the plaintiff] does not

provide any evidence by way of declaration to dispute [the defendant]'s declaration that she consented to receiving the texts. Instead, [the plaintiff] argues that her allegations in the Amended Complaint control, but in a factual challenge the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case and no presumptive truthfulness attaches to plaintiff's allegations.") (simplified).

In *St. Louis Heart Center, Inc.*, the Eighth Circuit affirmed the dismissal of the plaintiff's TCPA claim on standing grounds because the plaintiff had "not alleged a concrete or particularized harm resulting from receiving faxes that [the plaintiff] both invited and did not rebuke." *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 503 (8th Cir. 2018). Unlike the plaintiff in *St. Louis Heart Center, Inc.*, however, it is undisputed that Murch did not consent to receive the calls at issue here.

In *Stewart*, the court dismissed the plaintiff's TCPA claim alleging that the defendant failed to honor the plaintiff's request to be placed on the defendant's internal do-not-call list for lack of standing because "he did not clearly express a desire to stop receiving calls from [the defendant]." *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021). Here, however, it is undisputed that the relevant phone number was on the DNC registry at the time of the relevant calls.

In *Winner*, the Court dismissed the plaintiffs' claims for lack of standing because the plaintiffs consented to receive the messages at issue. *See Winner v. Kohl's Dep't Stores, Inc.*, No. 2:16-cv-01541, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017) ("The facts contained in the Stipulation establish that both [plaintiffs] gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established

that they have standing to pursue the claims asserted in the FAC."). Here, however, it is undisputed that Murch did not consent to receive the calls at issue. The other cases that GPS cites in its reply are distinguishable for similar reasons.

In light of the Court's conclusion that the question of jurisdiction and the merits are intertwined and that material jurisdictional facts are in dispute, the district judge should deny GPS's Rule 12(b)(1) standing challenge. *See Mecinas*, 30 F.4th at 896 ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.") (citation omitted); *Augustine*, 704 F.2d at 1077 ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."); *Ventura Packers, Inc.*, 305 F.3d at 922 ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits.").

### 2.    Injunctive Relief

Murch seeks "[i]njunctive relief for the Class, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry[.]" (Compl. at 8-9.) GPS moves to dismiss Murch's request for injunctive relief because she "does not allege any facts in her Complaint suggesting she is at any imminent risk of any future injury (i.e., of receiving additional violative calls from or on behalf of GPS in the future), as required to demonstrate Article III standing for injunctive relief in any federal case." (Def.'s Mot. at 14) (emphasis omitted).

///

PAGE 16 – FINDINGS AND RECOMMENDATION

Murch responds that injunctive relief is "particularly warranted here [because] Plaintiff continues to receive calls and there is real risk of future harm."[5] (Pl.'s Resp. at 17) (emphasis omitted). Murch further argues that "[i]t is plausible that the Plaintiff may receive additional calls in the future, and [GPS] has made no assurances that it will abstain from calling the Plaintiff." (*Id.* at 17-18, citing *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024).)

### a.    Applicable Law

"In a facial [standing] attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In evaluating a facial challenge under Rule 12(b)(1), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Wolfe*, 392 F.3d at 362 ("[T]he defendants argue that the allegations in [the] complaint are insufficient on their face to establish subject matter jurisdiction. Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint. We assume [the plaintiff]'s allegations to be true and draw all reasonable inferences in his favor.").

"For a prospective remedy such as injunctive relief, the 'threatened injury must be certainly impending,' and 'allegations of possible future injury are not sufficient.'" *Griffin*, 2024 WL 4333373, at *3 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Previous injuries, though insufficient by themselves to grant standing, are 'evidence bearing on

---

[5] At oral argument, however, Murch's counsel acknowledged that Murch has not received a call from GPS since the November 1, 2024 call at issue. (*See* Hr'g Tr. 34:10-12.)

whether there is a real and immediate threat of repeated injury.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

> **b.      Analysis**

The Court finds that Murch has failed to allege facts to establish "a present case or controversy regarding injunctive relief[.]" *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Murch alleges that GPS called her three times over a five-day period in 2024. (Compl. ¶ 21.) Murch alleges that she did not answer the first two calls. (*Id.* ¶¶ 23-24.) Murch answered the third call during which "'Alex' from 'GPS Capital Markets' . . . attempted to sell [Murch] [GPS]'s foreign exchange trading platform[.]" (*Id.* ¶¶ 24-25.) Murch does not allege any other details relating to her conversation with GPS, but alleges that she "never provided her consent or requested the calls." (*Id.* ¶ 30.)

In *Griffin*, the court held that the plaintiffs "sufficiently allege[d] an imminent risk of future harm that entitles them to injunctive relief" because each of the plaintiffs continued to receive calls soliciting life insurance after repeatedly informing the defendant that they were not interested in its products. *See Griffin*, 2024 WL 4333373, at *1, *6 (alleging that one plaintiff received three calls from the same agent and informed him each time that he was not interested in the life insurance products offered); *id.* at *1-2 (alleging that the second plaintiff received two calls from the defendant's agents, in which the defendant transferred her to multiple agents who continued to solicit life insurance even after she informed the agents that she was not interested in their products). Here, Murch does not allege that she ever requested that GPS stop calling her or that GPS has called her since November 1, 2024.

Having considered the factual allegations in Murch's complaint, the Court finds that Murch alleges only a possible future injury and therefore lacks standing to pursue her claim for

injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("[T]he 'threatened injury must be *certainly impending* to constitute injury in fact' and "allegations of *possible* future injury are not sufficient." (quoting *Clapper*, 568 U.S. at 409)); *see also Woodburn v. Gen. Auto. Ins. Servs.*, No. 2:22-cv-01975, 2023 WL 11892501, at *2 (D. Nev. Nov. 6, 2023) (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing because "she has not plausibly alleged that [the defendant] is likely to wrong her again in a similar way" considering "[t]he amended complaint includes a screenshot showing that Woodburn responded to [the defendant]'s second text by typing 'Stop,' and she does not allege she received another text thereafter"); *Blair v. Assurance IQ LLC*, No. 2:23-cv-00016, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023) (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing and finding that the plaintiff failed to "allege a sufficient threat of future harm—let alone 'actual and imminent' or 'certainly impending' harm[ because] . . . he does not even mention the possibility of future calls[ a]nd according to the amended complaint, he only received calls over a period of seven days"). Accordingly, the district judge should dismiss Murch's claim for injunctive relief.

### B.    Rule 12(b)(6)

#### 1.    Failure to state a claim

GPS moves to dismiss Murch's claim under Rule 12(b)(6) for failure to state a claim on multiple grounds. First, GPS argues that Murch fails plausibly to "allege a theory of liability under the TCPA against GPS, which alone is fatal and warrants dismissal." (Def.'s Mot. at 15-21.) Second, GPS argues that Murch fails to allege sufficient facts supporting her TCPA claim because "she readily admits that she only answered one of the three calls at issue." (*Id.* at 22.) Third, GPS argues that Murch fails to state a viable TCPA claim because "the Complaint also fails to sufficiently allege that the communications Plaintiff purportedly received constituted

actionable 'telephone solicitations' as defined by the TCPA's implementing regulations." (*Id.* at 23-24.) Fourth, GPS argues that the Court should dismiss Murch's claim because "Plaintiff does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" (*Id.* at 24-25) (emphasis omitted).

With respect to GPS's first argument, Murch responds that she has sufficiently alleged facts that support a theory of direct liability against GPS. (Pl.'s Resp. at 19-25.) To GPS's remaining arguments, Murch responds that she has sufficiently pled all required elements of her TCPA claim. (*Id.* at 25-32.)

### a.    Direct Liability

GPS moves to dismiss Murch's claim on the ground that "the complaint lacks sufficient non-conclusory factual allegations indicating that the defendant actually made the calls at issue by taking the steps necessary to physically place a call." (Def.'s Mot. at 16; *see also* Def.'s Reply at 16, "Plaintiff's Opposition ultimately fails to refute GPS's substantive arguments on the Rule 12(b)(6) issues.") Murch responds that "this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint[.]" (Pl.'s Resp. at 23.)

### 1)    Applicable Law

Under the TCPA, "[t]here are two potential theories of liability: (1) direct liability; and (2) vicarious liability." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). "Under the direct liability standard, 'the complaint must allege facts showing the defendant actually placed calls violating the TCPA.'" *Griffin*, 2024 WL 4333373, at *3 (quoting *Workman v. CarGuard Admin. Inc.*, No. 2:23-cv-00961, 2024 WL 249160, at *5 (D. Ariz. Jan. 23, 2024)). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically

PAGE 20 – FINDINGS AND RECOMMENDATION

place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* (citation omitted).

### 2)    Analysis

Murch alleges that "[d]uring the third call, which Plaintiff answered, the Plaintiff spoke to an individual named 'Alex' from 'GPS Capital Markets.'" (Compl. ¶ 24.) Murch further alleges that "[u]pon information and belief, [the caller's] telephone number is owned by Defendant GPS." (*Id.* ¶ 22.) Murch clarifies in her response that she is asserting claims against GPS on a direct theory of liability. (Pl.'s Resp. at 19.)

The Court finds that Murch's allegations, taken in the light most favorable to her, support a reasonable inference that GPS initiated the relevant calls. Specifically, Murch alleges that the same phone number called her three times within a five-day period. (*See* Compl. ¶¶ 21-25.) Murch further alleges that during the third call, the caller identified himself as "'Alex' from 'GPS Capital Markets'" and "billed [GPS] as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (*Id.* ¶¶ 24-25.) The Court finds that Murch's allegations are sufficient to support a reasonable inference that GPS initiated the alleged calls. *See Griffin*, 2024 WL 4333373, at *4 (finding the plaintiff's allegations that he "received repeated calls by an outfit purporting to call on behalf of the Defendant to sell Defendant's services" to be "sufficient to create a plausible inference that Defendant made the calls at issue"); *Greene*, 2021 WL 4926495, at *3 ("[T]he most reasonable inference is the simplest one—that the caller is from where she said she was.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege facts supporting a direct theory of liability against GPS.

b.      **Number of Calls**

GPS moves to dismiss Murch's claim on the ground that "she has not sufficiently pleaded she received more than one telephone solicitation by or on behalf of GPS in [a] 12-month period, as required" to assert her TCPA claim. (Def.'s Mot. at 22.) Murch responds that "the TCPA does not require a plaintiff to answer each call, [evidenced] by its very definition requiring only the receipt of more than one call, and the Plaintiff received three." (Pl.'s Resp. at 26) (emphasis omitted). Murch further argues that the alleged facts support a reasonable inference that all three calls were telephone solicitations from GPS. (*Id.* at 25-27.)

1)      **Applicable Law**

"The TCPA gives consumers 'who ha[ve] received more than one telephone [solicitation] within any 12-month period by or on behalf of the same entity . . . a private right of action." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448 (9th Cir. 2018) (quoting 47 U.S.C. § 227(c)(5)). Importantly here, "more than one telephone solicitation is needed to trigger a [TCPA] violation." *Greene*, 2021 WL 4926495, at *5.

2)      **Analysis**

Murch alleges that she received three calls from the relevant phone number and that she only answered the third call. (*See* Compl. ¶¶ 21-24.) The parties identify case law with conflicting interpretations of the TCPA's requirement that a plaintiff "receive[] more than one telephone [solicitation] within any 12-month period[.]" 47 U.S.C. § 227(c)(5). Neither party identifies, and the Court has not found, any binding authority interpreting the relevant statutory language.

GPS primarily relies on *Greene* and similar cases holding that a plaintiff who pleads that she received multiple calls from the same number, but only answered one call, fails sufficiently to plead facts supporting receipt of "more than one telephone [solicitation]" to support a TCPA

claim. *See Greene*, 2021 WL 4926495, at *5 ("Plaintiff has alleged that his mother placed his number on the DNC registry. And while he alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation. Plaintiff, however, has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 2:23-cv-05114, 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024) ("[The defendant] placed nine calls to [the plaintiff]. But [the plaintiff] only answered one of these calls. [The plaintiff] does not allege more than one telephone solicitation within a twelve-month period. He does not presently allege [the defendant] violated the Telephone Consumer Protection Act.") (citations omitted); *Gillam v. Reliance First Cap., LLC*, No. 2:21-cv-04774, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023) ("[T]he call log shows, with the exception of the August 4, 2021 call, that the other calls were blocked, missed calls or declined calls. As such, Plaintiff has not plausibly alleged that these prior calls were 'telephone solicitation[s]' under Section 227(c)(5)." (citing *Greene*, 2021 WL 4926495, at *5)) (simplified).

Murch primarily relies on cases holding that, at the pleading stage, a plaintiff's allegations that she only answered one telephone solicitation, but received multiple calls from the same phone number, are sufficient to state a TCPA claim. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("[The plaintiff] has alleged that she received and answered a call from [the telemarketer] in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from [the telemarketer]. The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the

first three calls to market [the defendant]'s services."); *Whittaker*, 2023 WL 167040, at *2 ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls[ was solicitation].") (citations omitted); *Atkinson v. Choice Home Warranty*, No. 2:22-cv-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) ("[W]hile Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, claims that Defendant began calling [the plaintiff] on her cellular telephone to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the seven calls explicitly listed were 'telephone solicitations' in violation of the statute.") (simplified); *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

In light of the Court's obligation to draw all reasonable inferences in Murch's favor at the pleading stage, the Court finds that it is reasonable to infer from the content and timing of the third call that the first two calls from the same phone number were for the same purpose. *See Toney*, 75 F. Supp. 3d at 746 ("The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Whittaker*, 2023 WL 167040, at *2 ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls[ was solicitation].") (citations omitted); *Bird*, 2022 WL 18216007, at *3 ("The Court agrees that it is reasonable to infer that

the same caller is responsible for calls from the same number, whether those calls are answered or not.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received more than one telephone solicitation.

### c.     Telephone Solicitation

GPS moves to dismiss Murch's claim on the ground that "she does not plead any facts, beyond her naked conclusions, suggesting that she was actually solicited to purchase GPS's goods or services on that call." (Def.'s Mot. at 24.) Murch responds that she "received three calls from the same number, and the third caller was GPS Capital calling to solicit its foreign exchange services." (Pl.'s Resp. at 28.)

### 1)     Applicable Law

The TCPA and related regulations defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15); *see also* 47 U.S.C. § 227(a)(4) (same). "The purpose of a text or call determines whether it qualifies as a telephone solicitation, and courts use 'a measure of common sense' to determine its purpose." *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

### 2)     Analysis

Murch alleges that during the third call, GPS's employee "attempted to sell the Plaintiff the Defendant's foreign exchange trading platform, which he billed as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (Compl. ¶ 25.) Although the call transcript contradicts Murch's allegation that GPS's employee "attempted to sell" *Murch* its "foreign

PAGE 25 – FINDINGS AND RECOMMENDATION

exchange platform" (Compl. ¶ 25), the Court nevertheless finds that Murch sufficiently pleads facts supporting her allegation that the relevant phone call was a "telephone solicitation." As discussed above, Murch alleges and the call's transcript confirms that on the call, GPS's employee "billed [GPS] as the 'world's largest foreign exchange brokerage'" and "sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (*Id.*) Drawing all reasonable inferences in Murch's favor, the Court finds these allegations support a reasonable inference that GPS's employee initiated the relevant call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4); *see also Abboud*, 731 F. Supp. 3d at 1102 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." (quoting *Chesbro*, 705 F.3d at 918)); *see also Whittaker*, 2023 WL 167040, at *2 ("Except for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money, as did the recorded message in this case.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received a telephone solicitation.

### d. DNC Registration

GPS moves to dismiss Murch's TCPA claim on the ground that she "does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" (Def.'s Mot. at 25) (emphasis omitted). Murch responds that "the TCPA cannot require that an individual later seeking to sue under the Do Not Call Registry provisions of the TCPA needs to personally register their number on the Do Not Call Registry because that fact would be impossible to prove, as the FTC is neither authorized to nor collects such information." (Pl.'s Resp. at 29) (emphasis omitted).

PAGE 26 – FINDINGS AND RECOMMENDATION

### 1)    Applicable Law

TCPA regulations prohibit any "person or entity [from] initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2). "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

### 2)    Analysis

Murch alleges that her "telephone number has been listed on the National Do Not Call Registry more than 31 days prior to the calls at issue." (Compl. ¶ 19.) The parties have identified case law with conflicting interpretations of 47 C.F.R. § 64.1200(c)(2). Specifically, GPS cites *Rombough* and similar cases which interpreted the relevant regulatory language to require a plaintiff to plead that they personally registered the relevant phone number on the DNC registry to avoid dismissal. (*See* Def.'s Mot. at 24-25); *see also Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 1:22-cv-00015, 2022 WL 2713278, at *3 (N.D. Iowa June 9, 2022) (dismissing the plaintiff's TCPA claim in part because "she does not allege that she registered her telephone number on the do-not-call-registry"); *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823, 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (dismissing the plaintiff's TCPA claim in part because the plaintiff failed to allege that "they placed their own numbers on the DNC list (as opposed to someone else placing their numbers on the list)"). Murch cites a number of cases disagreeing with *Rombough*'s analysis and argues that *Rombough* "has been disagreed with by every other court to consider it and its premises." (Pl.'s Resp. at 31, collecting cases.) The parties have not identified, and the Court has not found, any binding authority interpreting the relevant regulatory language.

///

As one district court in this circuit explained, "the regulation states that it applies to a 'residential telephone subscriber who has registered his or her number' on the DNC Registry, [however,] it goes on to require that DNC registrations 'must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.'" *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024) (quoting 47 C.F.R. § 64.1200(c)(2)). The Court agrees with the *Abrahamian* court's analysis and conclusion "that as phone numbers change hands, the DNC Registry may not always reflect which consumers requested to be included" and "that the [regulation's] language includes the term 'indefinitely' to remove the ambiguity of which numbers should be protected." *Id.* Thus, the Court agrees with the majority of district courts in this Circuit that have interpreted 47 C.F.R. § 64.1200(c)(2) and rejected the requirement that the plaintiff plead that they personally registered the relevant phone number on the DNC registry. *See id.* (rejecting *Rombough*'s interpretation of 47 C.F.R. § 64.1200(c)(2)); *Nichols*, 2025 WL 689721, at *3 ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."); *cf. Mason v. Spring EQ LLC*, No. 5:24-cv-01833, 2024 WL 5424385, at *3 (C.D. Cal. Nov. 27, 2024) (denying the defendant's motion to stay because "[o]n its face, the statutory language appears to protect phone numbers until they are removed regardless of personal registration" and "[c]onsidering the statutory language and conflicting case law cited by the parties, the Court is unconvinced that Defendant will clearly prevail in its motion to strike").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she registered her number on the DNC registry.

///

### C.     Class Allegations

Murch seeks to certify a "National DNC Class" on behalf of:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of GPS's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

(Compl. ¶ 33.)

GPS moves in the alternative to strike Murch's "class allegations under Rule 12(f) and/or 23." (Def.'s Mot. at 25-31.) As recognized in *Walters*, "[t]here is an apparent split in this district on the issue" of whether a defendant's challenge to class allegations at the pleading stage is properly analyzed under Rule 12(b)(6) or Rule 12(f). *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-cv-01173-PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018) (citations omitted), *findings and recommendation adopted*, 2018 WL 2418544 (D. Or. May 29, 2018); *compare Bates v. Bankers Life & Cas. Co*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014) (granting the defendant's Rule 12(f) motion to strike class allegations at the pleading stage), *aff'd*, 716 F. App'x 729 (9th Cir. 2018) and *Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015) ("The Court finds it inappropriate to address Defendants' motion to dismiss [the plaintiff]'s class allegations at th[e pleading] stage" because "other Federal Rules of Civil Procedure exist to address improper class action allegations [including] . . . Rule 12(f)[.]") *with Speers v. Pre-Employ.com, Inc.*, No. 3:13-cv-01849-HU, 2014 WL 2611259, at *2 (D. Or. May 13, 2014) ("[A] defendant may move to dismiss class allegations prior to discovery in appropriate cases, although a Rule 12(f) motion is not the appropriate vehicle to challenge the sufficiency of class allegations."), *findings and recommendation adopted*, 2014 WL 3672910 (D. Or. July 23, 2014); *cf. Gardiner v. Walmart Inc.*, No. 4:20-cv-04618, 2021 WL 2520103, at *10 (N.D. Cal. Mar. 5, 2021) ("Courts within this District and within the Ninth Circuit have

determined that motions to strike are not the proper vehicle for seeking dismissal of class allegations.") (simplified) (collecting cases). For the reasons explained below, the Court finds that Murch's class allegations are insufficient under either standard.

        1.        **Rule 12(b)(6)**

        a.        **Applicable Law**

"Generally, Rule 12(b)(6) is not a proper vehicle for dismissing class claims, but district courts dismiss class allegations under the *Twombly/Iqbal* standard where the complaint 'lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Garcia v. Anane Enter. LLC*, No. 2:24-cv-01993, 2025 WL 894616, at *14 (E.D. Cal. Mar. 24, 2025) (quoting *Mish v. TForce Freight, Inc.*, No. 3:21-cv-04094, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021)); *see also Webb v. Rejoice Delivers LLC*, No. 5:22-cv-07221, 2025 WL 974996, at *2 (N.D. Cal. Apr. 1, 2025) (same); *Johnson v. Air Prods. & Chems., Inc.*, No. 2:22-cv-07327, 2023 WL 2663279, at *5 (C.D. Cal. Jan. 26, 2023) (same). Dismissing class allegations under the *Twombly/Iqbal* standard "does not test Plaintiff's compliance with Rule 23, and instead measures those claims under Rule 8(a)'s federal pleading standard." *Valenzuela v. Everi Games Inc.*, No. 2:24-cv-00257, 2024 WL 5681957, at *4 n.3 (C.D. Cal. Feb. 15, 2024) (citations omitted); *see also Guerra v. United Nat. Foods, Inc.*, No. 5:19-cv-01684, 2019 WL 13203781, at *13 (N.D. Cal. Nov. 8, 2019) ("Class certification discovery is not a substitute to the pleading requirements of Rule 8 and *Twombly*. Class allegations must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." (quoting *Jue v. Costco Wholesale Corp.*, No. 3:10-cv-00033, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010))) (simplified); *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, No. 2:15-cv-00464, 2015 WL 9487928, at *1-2 (W.D. Wash. Sept. 29, 2015) ("[When analyzing the defendant's Rule 12

challenge to the class allegations, t]he question . . . is whether the allegations in the First

Amended Complaint state 'plausible' grounds for class certification or whether they are so

conclusory or formulaic that they should be disregarded." (citing *Twombly*, 550 U.S. at 570)). "If

the class allegations are legally or factually defective, . . . dismissal is appropriate." *Grundmeyer*,

2015 WL 9487928, at *1 (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035,

1041 (9th Cir. 2010)); *see also Garcia*, 2025 WL 894616, at *14 ("Class claims must be

supported by sufficient factual allegations demonstrating that the class device is appropriate and

discovery on class certification is warranted.") (simplified); *Flores v. Starwood Hotels & Resorts

Worldwide, Inc.*, No. 8:14-cv-01093, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) ("[I]f

a class action complaint could survive a motion to dismiss based merely on the need for class

discovery, then many, if not all, class action complaints would have expansive class allegations

and definitions to permit a fishing expedition during discovery. The Court is troubled by this

possibility.").

### b.     Analysis

Murch alleges that "[c]lass action treatment is superior to the alternatives for the fair and

efficient adjudication of the controversy alleged" in part because "[t]here are hundreds of Class

members, such that joinder of all members is impracticable." (Compl. ¶ 39.) Murch further

alleges that the proposed class is sufficiently numerous because, although "[t]he exact number of

Class members is unknown[,] . . . based on the *en masse* nature of telemarketing [the class] is

believed to be at least hundreds of persons at this time, and individual joinder in this case is

impracticable." (*Id.* ¶ 35.)

The Court finds that Murch fails plausibly to allege facts to support her class allegations.

Specifically, Murch's allegations, the judicially noticeable materials, and materials incorporated

by reference all support that GPS intended to call a business at a number published on the

business's website and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient. (*See* Pl.'s Resp. Ex. D.) Murch does not dispute that GPS markets or sells its products to businesses and not to consumers. (*See* Greenleaf Decl. ¶ 9, "GPS sells foreign exchange and currency management solutions to corporate accounts. As such, GPS does not market its products or services to the general public or consumers like Plaintiff[.] Rather, GPS only sells its products and services to businesses and persons working in the financial services and banking sectors. In other words, GPS only markets 'business to business' and not to consumers."; Hr'g Tr. 35:5-11, "[Murch does not] dispute that [GPS] do[es] appear to be a more business-centered or business-to-business operation. But . . . ultimately, I think that those questions are best raised for discovery[.]") Nor does Murch dispute that S.C.'s company website listed Murch's phone number as S.C.'s business phone number at the time GPS made the calls at issue.[6] (*See* Greenleaf Decl. Exs. A, C.) In light of these undisputed facts, the Court asked Murch's counsel about whether Murch had a good faith factual basis to assert her claim on behalf of others similarly situated. (*See* Hr'g Tr. 35:12-16.) Murch's counsel responded that Murch's class allegations are primarily supported by his general knowledge about telemarketers and his experience in TCPA cases. (*See id.* 35:17-25, 36:1-4, 6-13.)

Given the unique and undisputed facts in the current record, the Court finds that "this is one of the rare cases in which dismissal of class allegations under Rule 12(b)(6) is appropriate,

---

[6] Consistent with Ninth Circuit authority, the Court takes judicial notice of the fact of publication, and what was in the public realm at the time, but not whether the contents of the publications are in fact true. *See also Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018) ("We take notice of the fact of publication, but do not assume the truth of the article's contents." (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010))); *see also* FED. R. EVID. 201(c)(1) ("The court . . . may take judicial notice on its own.").

because 'the complaint lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.'" *Webb*, 2025 WL 974996, at *4 (quoting *Mish*, 2021 WL 4592124, at *8); *see also Garcia*, 2025 WL 894616, at *14 (dismissing class allegations because the plaintiff's "conclusory allegations fail to plausibly suggest the existence of a class who collectively suffered under [the] Defendants' unlawful policies and practices") (citation omitted); *Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 4:23-cv-06581, 2024 WL 1772863, at *16 (N.D. Cal. Apr. 23, 2024) (dismissing class allegations because "the Court concludes that this is one of the rare cases where Plaintiff's class allegations are so conclusory that forcing Defendant on a deep-sea charter of class discovery would be prejudicial") (simplified); *Johnson*, 2023 WL 2663279, at *5 (dismissing class allegations because the plaintiff "has not alleged sufficient facts to support the broad meal and rest period classes he alleges in his complaint"); *Mish*, 2021 WL 4592124, at *8-9 ("As currently pled, [the plaintiff]'s class allegations . . . lack 'sufficient factual content' to enable 'the Court to make a reasonable inference that Defendants are liable' for the claims alleged.") (citations omitted); *Ovieda v. Sodexo Operations, LLC*, No. 2:12-cv-01750, 2012 WL 1627237, at *4 (C.D. Cal. May 7, 2012) ("[The plaintiff's] allegation is wholly conclusory and thus we need not take it as true in deciding this Motion. In sum, Plaintiff's class allegations . . . must be dismissed because she has alleged absolutely no facts to show that her work experience was similar to that of any member of the putative class.").

Specifically, the Court finds that Murch fails plausibly to allege "sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." *Garcia*, 2025 WL 894616, at *14; *see, e.g.*, *Taylor v. Penske Logistics, LLC*, No. 5:20-cv-02623, 2021 WL 4288525, at *4 (C.D. Cal. Sept. 21, 2021) ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without

any additional facts, that [the defendant] treated other employees in a similar fashion. This 'logical disconnect' renders the class claim subject to dismissal."); *Zamora v. Penske Truck Leasing Co., L.P.*, No. 2:20-cv-02503, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) ("Plaintiffs' arguments suffer from a basic logical disconnect. Whether Plaintiffs adequately allege claims on their own behalf is beside the point. Plaintiffs do not assert any factual support for their class allegations. Rather, Plaintiffs merely allege that their claims are also brought on behalf of the Class. Without any factual support, . . . the Court finds such leaps implausible. . . . Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter.") (citation omitted); *Alvarado v. Wal-Mart Assocs., Inc.*, No. 2:20-cv-01926, 2020 WL 6532868, at *3 (C.D. Cal. Oct. 22, 2020) ("Plaintiff cannot extrapolate from her singular experience that Defendants have a pattern and practice of committing similar violations[.]") (simplified); *Alvarado v. Wal-Mart Assocs., Inc.*, No. 2:20-cv-01926, 2020 WL 6526372, at *3 (C.D. Cal. Aug. 7, 2020) ("Before a plaintiff can obtain class discovery and put a defendant through the expense of opposing class certification, she must at least plausibly allege that the asserted claims might apply to others in the putative class. Performing its 'context-specific task,' the Court finds that as currently stated, Plaintiff's allegations make it implausible that other putative class members will share her alleged injuries.") (citation omitted); *Antonio v. Saxon Mortg. Servs., Inc.*, No. 2:11-cv-10066, 2012 WL 13426614, at *3 (C.D. Cal. Sept. 7, 2012) ("Plaintiffs clearly do not know if the proposed class actually exists. Nor have Plaintiffs alleged any facts that would give them, or the Court, any reason to believe (or even hope) that such a class exists. The federal fact-pleading standard, though lenient, does not permit a plaintiff to proceed with claims based on pure speculation. Plaintiffs cannot make baseless assumptions in their complaint in the hopes that something will 'stick' during discovery. Plaintiffs' argument here amounts to a request for

leave to pursue class claims based on guesses lacking factual support in the hopes that a class

will somehow materialize at a later date."); *Ovieda*, 2012 WL 1627237, at *1 ("[A] plaintiff

cannot 'unlock the doors of discovery . . . armed with nothing more than conclusions.'" (quoting

*Iqbal*, 556 U.S. at 678-79)).

For these reasons, the district judge should dismiss Murch's class allegations pursuant to

Rule 12(b)(6).

### 2.    Rule 12(f)

If the Court declines to dismiss Murch's complaint, GPS moves in the alternative to

strike Murch's "class allegations under Rule 12(f) and/or 23[.]" (*See* Def.'s Mot. at 25-31.)

#### a.    Applicable Law

Rule 12(f) provides that a "court may strike from a pleading . . . any . . . immaterial,

impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "Where the complaint demonstrates

that a class action cannot be maintained on the facts alleged, a defendant may move to strike the

class allegations prior to discovery." *Tomaszewski v. Circle K Stores Inc.*, No. 2:20-cv-01569,

2021 WL 2661190, at *2 (D. Ariz. Jan. 12, 2021) (quoting *Sanders v. Apple Inc.*, 672 F. Supp.

2d 978, 990 (N.D. Cal. 2009)). "[I]n the context of a motion to strike class allegations, in

particular where such a motion is brought in advance of the close of class discovery, it is

properly the defendant who must bear the burden of proving that the class is not certifiable."

*Bates*, 993 F. Supp. 2d at 1340-41. "Yet where the plaintiffs fail to make even a prima facie

showing of Rule 23's prerequisites, . . . the burden is on the plaintiff to demonstrate that

discovery measures are likely to produce persuasive information substantiating the class action

allegations." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citation

omitted).

///

"The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.'" *Nichols*, 2025 WL 689721, at \*4 (quoting *Vinole*, 571 F.3d at 942). "But when the problem with the class allegations is 'facially evident, it makes sense to address the issue early on.'" *Id.* (quoting *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024)); *see also Granados v. OnPoint Cmty. Credit Union*, No. 3:21-cv-00847-SI, 2023 WL 3570039, at \*8 (D. Or. May 18, 2023) ("Class allegations may be stricken at the pleading stage. . . . The granting of such motions 'has happened . . . when the class definition is obviously defective in some way.'") (citations omitted).

### b.    Analysis

The Court recommends that the district judge strike Murch's class allegations for several reasons.

As an initial matter, the Court finds that Murch's class definition fails because, as defined and in light of Murch's own factual allegations, Murch is not a member of the class. Specifically, Murch seeks to represent individuals "who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of GPS's goods or services[.]" (Compl. ¶ 33.) Murch fails plausibly to allege, however, that she received any calls from GPS encouraging the purchase of GPS's goods or services. Rather, construing her allegations in the light most favorable to her, Murch received a phone call initiated for the purpose of encouraging S.C. or anyone else "who works at [S.C.'s company] . . . regarding foreign exchange" to purchase GPS's goods or services. (Pl.'s Resp. Ex. D at 1.) Murch does not allege that she worked at S.C.'s company or dealt with foreign exchange. The call's transcript makes clear that the caller never offered Murch any goods or services. (*See generally id.*) Although Murch's allegations may be sufficient at the pleading stage to support her claim that she received a call initiated for the

PAGE 36 – FINDINGS AND RECOMMENDATION

*purpose* of solicitation, she fails sufficiently to allege that the caller "encourage[d] the purchase of GPS's good or services." (Compl. ¶ 33.) Thus, Murch's proposed class lacks typicality because she "has not alleged that she falls into her own class definition." *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-cv-00221, 2024 WL 3367536, at *9 (S.D. Cal. July 9, 2024) (striking class allegations in part because the plaintiff "has not alleged that she falls into her own class definition" and "the Complaint does not name any other plaintiffs, [therefore] the purported class lacks typicality" (citing *Galan Segura v. CRST Van Expedited, Inc.*, No. 5:12-cv-01901, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014))); *Ismail v. Am. Airlines, Inc.*, No. 2:22-cv-01111, 2023 WL 5504932, at *7 (C.D. Cal. July 14, 2023) (striking class allegations in part because the plaintiff "pleads that he was an 'exempt supervisor,' but all but one of his proposed Class Definitions include only non-exempt workers" and "[t]he one proposed Class Definition that includes supervisors specifies that it includes only 'level 3 and level 4 supervisors,' and he does not allege that his job title fits into that category"); *see also Philips v. Ford Motor Co.*, No. 5:14-cv-02989, 2016 WL 7428810, at *8 (N.D. Cal. Dec. 22, 2016) ("Typicality requires that the named Plaintiffs be members of the class they represent[.]") (simplified), *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

Further, the Court finds that Murch's proposed class definition would inappropriately require the Court to make findings on legal issues to determine class membership. Specifically, Murch seeks to represent a class of individuals "who received more than one telemarketing call[.]" (Compl. ¶ 33.)

Like "telephone solicitation," the relevant regulations define "telemarketing" as including only calls or messages initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. §

64.1200(f)(13). Thus, determining class membership is not based on objective criteria. Rather, determining class membership requires a subjective inquiry into whether GPS initiated each call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, issues directly related to the merits of each member's claim. *See Nichols*, 2025 WL 689721, at *5 (striking class allegations and "replacing the phrase 'telephone solicitations' with 'telephone calls'" because "whether a person received a 'telephone call' is an objective criterion that does not require the Court to make an upfront determination regarding consent"); *Salaiz v. eHealthInsurance Servs., Inc.*, No. 5:22-cv-04835, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023) (striking class allegations because the plaintiff's proposed class definition "improperly relies on merits determinations"); *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886, 2021 WL 1140227, at *3 (W.D. Wash. Mar. 24, 2021) (striking class allegations "because injury and causation are elements that must be established and which go to the question of liability; they are therefore not appropriate as part of the definition of the class"); *cf. Panacci v. A1 Solar Power, Inc.*, No. 3:15-cv-00532, 2015 WL 3750112, at *3 (N.D. Cal. June 15, 2015) (denying motion to strike TCPA class allegations because "to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe" and "[n]one of these questions involve legal analysis" because "[m]embership can be determined by objective criteria") (citation omitted).

Murch argues that "courts have certified classes with nearly identical definitions in the past." (Pl.'s Resp. at 33, citing *Aley v. Lightfire Partners, LLC*, No. 5:22-cv-00330, 2024 WL 4007345, at *2 (N.D.N.Y. Aug. 30, 2024)) (emphasis omitted). As an initial matter, *Aley* is a district court opinion from another circuit. *Cf. Joe Hand Promotions Inc. v. Gonzalez*, 423 F.

Supp. 3d 779, 784 (D. Ariz. 2019) ("District court opinions are relevant for their persuasive authority, but this Court is not bound by the opinion of another judge of the same or different district." (citing *Starbuck v. City & Cnty. of S.F.*, 556 F.2d 450, 457 n.13 (9th Cir. 1977))).

In any event, the facts in *Aley* are distinguishable. Specifically, the court in *Aley* certified a class of individuals "who received more than one telemarketing call from [the defendant] as part of the 'Auto Protectors' calling campaign." *Aley*, 2024 WL 4007345, at *2. The court never addressed the purpose of the calls at issue, likely because the purpose of the alleged calls was undisputed. *See id.* ("[The Defendant] placed the telemarketing calls at issue relying on the supposed consent obtained through Myjobscorner.com."). As a result, class members could be identified by whether they received calls "pursuant to the same marketing campaign." *Id.* at *3. Here, however, GPS disputes the purpose of the alleged calls and Murch does not allege facts supporting that the relevant calls were made pursuant to a marketing campaign that could objectively determine the purpose of the calls at issue. On the contrary, Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient.

Finally, the Court finds that Murch has failed to satisfy her "burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Specifically, Murch alleges that "the exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable." (Compl. ¶ 35.)

///

As discussed above, however, it is clear from the relevant call's transcript, as well as judicially noticeable materials, that GPS contacted Murch unintentionally and that it intended to contact S.C. at a business phone number. In light of Murch's conclusory allegations, which are contradicted by the judicially noticeable materials and materials incorporated by reference, the Court finds that Murch has failed to make "a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d at 1424; *see also Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1028 (C.D. Cal. 2020) (striking class allegations because "[the plaintiff] fails to allege any facts in the FAC to support numerosity" and finding that "[the plaintiff]'s implicit suggestion that the six photographs may have contained the medical records of other individuals does not establish numerosity on its own" and "the claims that [the plaintiff] makes about the alleged numerosity of the class in her Opposition are absent from the FAC"); *Sallie Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496, 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020) (striking class allegations because the plaintiff "fail[ed] to allege any facts in the SAC to support numerosity and instead relies on only the possibility of discovery to substantiate her allegations" and stating "[t]he Court is unwilling to put both parties through costly discovery to permit [the plaintiff] further attempts to establish an implausible fact"); *cf. Seymour v. Fay Servicing, LLC*, No. 2:21-cv-01666, 2021 WL 6499937, at *13 (C.D. Cal. Aug. 25, 2021) (striking class allegations because the plaintiff "failed to plead commonality, and by extension, predominance").

For these reasons, if the district judge does not dismiss Murch's class allegations under Rule 12(b)(6), the district judge should grant GPS's Rule 12(f) motion to strike Murch's class allegations.

PAGE 40 – FINDINGS AND RECOMMENDATION

**CONCLUSION**

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART GPS's motion to dismiss and to strike (ECF No. 7). Specifically, the district judge should deny GPS's Rule 12(b)(1) motion, but grant GPS's motion to dismiss Murch's injunctive relief claim and dismiss or strike Murch's class allegations. The Court further recommends that the district judge allow Murch to file an amended complaint within fourteen (14) days if she is able to cure the pleading deficiencies discussed herein. If not, the case will proceed on Murch's individual TCPA claim.

**SCHEDULING ORDER**

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 6th day of June, 2025.

HON. STACIE F. BECKERMAN
United States Magistrate Judge